For the reasons stated, the application is dismissed.

VILLAREAL v. STATE.   (No. 4740.)

(Court of Criminal Appeals of Texas.   Dec. 5, 1917.   Dissenting Opinion Dec. 31, 1917.)

1. CRIMINAL LAW ⟨⟩182—FORMER JEOPARDY — DISCHARGE OF JURY AND TRANSFER OF CAUSE.

Where defendant indicted for homicide entered a plea of not guilty and was placed on trial, and the district attorney, on the ground of surprise by the testimony of the witness, offered to lay the predicate for the introduction of the deceased's dying declaration, requested a withdrawal of the case from the jury and its continuance on the ground of the absence of a certain witness, and such request was granted, and the jury discharged and the case continued and transferred to another county, defendant's plea of jeopardy when the case was called for trial in the latter county, supported by conceded facts, was well taken, and should have been sustained.

2. CRIMINAL LAW ⟨⟩739(4)—PLEA OF JEOPARDY—QUESTION FOR JURY.

Wherever a plea of former jeopardy is interposed, and facts are introduced in its support, the court should submit it to the jury.

Prendergast, J., dissenting.

Appeal from District Court, Ward County; Charles Gibbs, Judge.

Jose Villareal was placed on trial for homicide, his plea of jeopardy was overruled, and he appeals. Reversed and cause remanded.

Ben Palmer, Jno. B. Howard, and Clay Cooke, all of Jecos, for appellant. E. B. Hendricks, Asst. Atty. Gen., for the State.

DAVIDSON, P. J. [1] Appellant was placed on trial for killing Canuto Ornelas in Reeves county. After impaneling the jury and entering plea of not guilty, the state had advanced far enough in the introduction of its testimony to place on the stand Dr. Cortez, by whom it was expected to lay the predicate for the introduction of the dying declaration of deceased. His testimony was not very satisfactory, and left it in doubt as to a belief of deceased with reference to his hope of recovery. At this point the district attorney claimed he was surprised, and requested the court to withdraw the case from the jury and continue it. This request was in writing, and states the fact that there was an absent witness, who lived about 80 miles from the town of Pecos where the trial was being had. Without the consent and over the

protest of appellant, the court granted the request, discharged the jury, and continued the case. The court then, of his own motion, transferred the case to Ward county, which adjoins the county in which the homicide occurred. When the case was called for trial in the latter county appellant filed his plea of jeopardy. Facts were introduced to support it, and there seems to have been no controversy about the facts. This was not submitted to the jury by the court. The facts were conceded, but, not only so, evidence was introduced to prove the plea. All these matters are made to appear properly. The plea was well taken, and should have been sustained. See Vestal v. State, 3 Tex. App. 648; Pizano v. State, 20 Tex. App. 139, 54 Am. Rep. 511; Schulman v. State, 76 Tex. Cr. R. 229, 173 S. W. 1195; Hipple v. State, 191 S. W. 1151, L. R. A. 1917D, 1141. We deem it hardly worth while to discuss this question at length, for the reason it seems to be too well settled for discussion. When a party is placed upon his trial, and a plea of not guilty is entered before the sworn jury, jeopardy attaches. There may be circumstances under which the jury may be discharged without incurring jeopardy. Those circumstances are not here involved. If it were necessary, it could be stated from the record that there were other witnesses by whom the dying declaration could be proved and circumstances under which it was made, and in addition thereto the justice of the peace took it in writing, to which the deceased was sworn. The only question, however, is the district attorney was not enabled to properly lay the predicate for the introduction of the dying declaration by Dr. Cortez. It might be further stated that the absent witness named by the district attorney, who was something like 80 miles away, could have been brought before the court in a very short time. The rapid means of transportation in these days would not have made it impossible to have had this witness within even 12 hours, and if it was thought necessary a postponement might have been asked, or the case proceeded along other lines, until the witness was brought before the court. The round trip would have been 160 miles, and, under the service of automobiles these days, 8 or 10 hours would have been ample time in which to have secured the presence of this absent witness. It might be also stated in this connection that the absent witness was before the court and testified on the trial in Ward county and failed to lay the predicate, as we understand his testimony. These matters are mentioned, but so far as the plea is concerned it was well taken independent of any of those matters. The authorities cited cover this case. The plea was well taken, and, the facts being conceded, should have obtained.

[2] In this connection it is also stated that there was error on the part of the court in not submitting the plea to the jury. Wherever a plea of this character is interposed, and the facts are introduced in its support, the court should submit it to the jury.

The judgment is reversed and the cause remanded.

PRENDERGAST, J. (dissenting). I do not concur in Judge DAVIDSON'S statement of facts on the question of jeopardy.

After the organization of the jury, arraignment and plea of not guilty by appellant, it seems the district attorney introduced for the state the first witness, Dr. J. B. Cortez. What then occurred is shown in black and white, in writing, without any kind of doubt by the motion of the district attorney and the action and judgment of the court. I will therefore here copy both of these, merely omitting the style and number of the cause, and the designation of the court, etc. The district attorney's motion is as follows:

"Now comes Tom T. Garrard, Jr., representing the state in the above styled and numbered cause, and states to the court that by an unexpected occurrence since this trial commenced, which no reasonable diligence could have anticipated, he was taken by surprise; that a fair trial of this cause cannot be had; that the state relied for conviction in this said cause upon the dying declaration made by one Canuto Ornelas, for whose death defendant herein is being tried; said dying declaration was made and taken down in writing, and sworn to before a justice of the peace, J. F. Meier; that the deceased was a Mexican and could not speak the English language; that Dr. J. B. Cortez, a physician of Spanish or French extraction, attended said deceased Canuto Ornelas during his last sickness, and interpreted his said dying declaration to said J. F. Meier; that Dr. Cortez was the only man present when this dying declaration was made who understood deceased's condition and spoke his language; that the state relied on Dr. Cortez to lay the predicate for the introduction of the said dying declaration of said Canuto Ornelas; that the said Dr. Cortez speaks fairly good English, but at the same time it is rather broken, that the said Dr. Cortez has always told the district attorney and reiterated the statement just before he went on the witness stand that the deceased was conscious of approaching death and had no hopes of recovery when he made said dying declaration; that the said district attorney read the statute to the witness Dr. Cortez relating to dying declarations, and he positively and affirmatively stated that the deceased was conscious of approaching death and had no hope of recovery, but the said witness Dr. Cortez stated on the witness stand on cross-examination that the deceased had hope of recovery, and that upon the said cross-examination of the said Cortez, the court refused to admit the dying declaration of said deceased; that the state is keenly and greatly surprised at the testimony of the said witness Dr. Cortez; that the deceased made other and later declarations to one Guadalupe Ornelas when he was conscious of approaching death and had no hope of recovery, referring to and renewing the statement which he had previously made in writing, and that the district attorney did not know of these latter statements to the said Guadalupe Ornelas until the witness Dr. Cortez went on the stand; that the said Guadalupe Ornelas lives in Jeff Davis county, Tex., 80 miles straight through the country and across the Davis Mountains from Pecos, Reeves county, Tex., where his trial is being held, and 246 miles by rail

and auto; and it will therefore be impossible to get said witness here in time to try this case before the close of this term of court. Wherefore your petitioner prays that the court continue this case until the next term of the court."

Upon hearing by the court when this motion was made, the court made and entered this order:

"On this, the 25th day of May, A. D. 1917, after the above styled and numbered cause had been called for trial, both parties announced ready, the defendant pleaded not guilty to the indictment, and the state had introduced part of its testimony, the district attorney, on behalf of the state, presented an application to the court to continue said case, for the reason that he was surprised at the testimony of the witness whom he had just talked to in private, and said witness had told a different story in talking to the district attorney in private than that told on the witness stand; that the witness didn't seem to understand the matters about which he was called upon to testify, and the court was satisfied that the mistake in the testimony of the witness as given on the stand and as told to the district attorney was an unexpected and unforeseen occurrence, and had arisen since the trial commenced, which no reasonable diligence could have anticipated, and the court is further satisfied that the applicant, the district attorney, was so taken by surprise that a fair trial cannot be had, and it further appearing to the court that the witness desired by the state is not in Reeves county, and cannot be procured for this term of court, the court is therefore of the opinion that the said motion of the state is good, it is therefore sustained, and it is ordered and decreed by the court that the jury be discharged, that this cause be continued for the term, and that the defendant be remanded to the custody of the sheriff."

These documents need no comment. They show the facts, without any doubt, that the witness Guadalupe Ornelas lived in Jeff Davis county, 80 miles straight through the country and across the Davis Mountains from Pecos, Reeves county, where the case was on trial, and 246 miles by rail and auto, and that it was impossible to get this witness in time to try the case before the term of court closed. It was not merely 80 miles to the witness, but 246 miles by auto or rail. And besides, it was impossible to get him during that term of court. Instead of it being only 80 miles one way or 160 miles for the round trip, it was 246 miles one way or 492 miles the round trip.

On this trial the state proved the necessary undisputed facts to show that said dying declaration was admissible, and the court thereupon on this trial admitted it in evidence.

The decision of my Associates herein is flatly in the very face of the statute, the law, and the facts.

The statute (article 616, C. C. P.) is:

"A continuance may be granted on the application of the state or defendant after the trial has commenced, when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial commenced, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had, or the trial may be postponed to a subsequent day of the term."

The application of the district attorney and the order of the judge thereon, as shown above, meet this statute in every particular. It could not have been more complete.

In Schindler v. State, 17 Tex. App. 412, under this very statute on the plea of former jeopardy, this court, in a unanimous opinion, held:

"The law vests in the trial judge a discretion, under certain circumstances, to discharge a jury even in a felony case, without the consent of the defendant, and the exercise of such discretion will not be revised by this court, and will not be held to constitute jeopardy, except when it is made clearly to appear that such discretion has been abused."

In O'Connor v. State, 28 Tex. App. 291, 13 S. W. 15, on this subject, as one of the essentials of jeopardy, the court held:

"It devolved upon the defendant to prove * * * that without his consent, and without legal cause, the trial court discharged the jury trying him before said jury had rendered a verdict in said cause. Until these essentials of jeopardy were established affirmatively by the defendant, the presumption would prevail that the trial court in discharging the jury acted upon legal cause and did not abuse its discretion. Powell v. State, 17 Texas Ct. App. 345; Schindler v. State, Id. 408; Brady v. State, 21 Texas Ct. App. 659 [1 S. W. 462]; Jones v. State, 13 Texas Ct. App. 1."

The cases cited by Judge DAVIDSON are not in point. In this case this court and the lower court did not have to rely upon the presumption that the trial court acted "upon legal cause and did not abuse its discretion," for without any sort of doubt the unquestioned proof showed that the trial judge not only had legal cause to withdraw the cause from the jury and continue it, but that he did not abuse his discretion in doing so.

The state is just as much entitled to a fair trial as an accused is. By the opinion of the majority herein the state has been denied a fair trial, as stated, in the very face of the uncontradicted facts, the statute, and the decisions. The action of the trial judge in this matter was in every way right, and any other action by him would have been a gross injustice to the state, and in the face of the facts, the statute and the decisions.

I solemnly protest against the decision of my Associates in this case.